# EXHIBIT A

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00880-MSM-PAS     Document 1-3     Filed 09/13/23     Page 2 of 42 PageID #: 49

**STATE OF RHODE ISLAND**                    **SUPERIOR COURT**
**NEWPORT, SC.**

LINDA CRAWFORD,                    )
    Plaintiff                          )
                          )          C.A. No.
v.                                 )
                          )

SALVE REGINA UNIVERSITY (SRU);
SALVE REGINA UNIVERISTY BOARD
OF TRUSTEES THROUGH ITS PRESIDENT
DR. KELLIE J. ARMSTRONG;
JAMES G. MITCHELL, CHAIR SRU DEPARTMENT
OF MODERN LANGUAGES and PRESIDENT,
SALVE REGINA AAUP CHP.;
ESTHER ALARCON-ARANA, FACULTY, SRU DEPT.
OF MODERN LANGUAGES;
EMILY COLBERT-CAIRNS, FACULTY, SRU DEPT.
OF MODERN LANGUAGES
    Defendants                         )

## VERIFIED COMPLAINT

### INTRODUCTORY STATEMENT/NATURE OF THE ACTION

This action is commenced by (hereafter "Crawford" or "Plaintiff"), an individual,

against Salve Regina University (also refered to herein as SRU) , et al. (hereafter

"Defendants"), in order to remedy and seek relief for the Defendants' unlawful and

discriminatory employment practices based on sexual orientation, gender, religion, age,

color/race and related retaliation, in violation of The Rhode Island Fair Employment

Practices Act, the Rhode Island Civil Rights Act, and other laws.  Plaintiff also asserts

several common law claims such as breach of contract, defamation per se, intentional

infliction of emotional distress and other claims.

### JURISDICTION AND VENUE

Case Number: NC-2023-0489
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 3 of 42 PageID #: 50

2

1.      Jurisdiction of this Court is invoked pursuant to R.I.G.L. 8-2-13, 8-2-14, 28-5-1 et seq., 42-112-2 et seq. All conditions precedent to establishing this Court's jurisdiction over this action pursuant to R.I.G.L. 28-5-24.1 and other pertinent sections have been satisfied.

2.      The employment practices hereafter alleged to be unlawful were, and are now, being committed in the State of Rhode Island, and form part of the same case or controversy.

3.      Venue is proper in this Court, pursuant to, inter alia, R.I.G.L. 9-4-4 because:

a.      the alleged unlawful practices occurred and/or are continuing to occur within the State of Rhode Island, and in this judicial district;

b.      all records relevant to the alleged unlawful practices are maintained and administered in the Defendant Salve Regina University's (SRU) place of business in Newport, Rhode Island;

c.      the Plaintiff would currently be employed by the Defendant SRU at its place of business in Newport, Rhode Island, and within this judicial district, but for the Defendants' unlawful employment practices.

4.      Plaintiff timely filed a formal Charge of Discrimination with the Rhode Island Commission for Human Rights ("RICHR"), alleging that she had been discriminated against and subject to retaliation.

5.      In timely fashion, Plaintiff requested and received Right To Sue Authorization from the appropriate administrative agency. (Attachment 1)

Case Number: NC-2023-0489
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 4 of 42 PageID #: 51

3

6.     Plaintiff has filed this action within 90 days of the Right To Sue authorization, and has fulfilled all other conditions precedent to the institution of each count of this action.

## PARTIES

7.     The Plaintiff, Linda Crawford, is a resident of Newport, RI.

8.     The Defendant Salve Regina University ("Salve," "SRU" or "Defendant") is a domestic non-profit corporation, maintained to operate a principal place of business located in Newport, Rhode Island. The business operates for the purpose of providing higher educational services. Defendants Armstrong, Mitchell, Alarcon-Arana and Colbert-Cairns are all individuals in the employ of Salve Regina University. Defendant Board of Trustees is the governing board of SRU, operating with ultimate authority relative to control and decision making of Defendant university.

9.     On information and belief, at all times material to the allegations of this Complaint, the Defendant Salve has continuously, and does now, employ at least 500 or more employees in the State of Rhode Island.

10.     At all times material to the allegations of this Complaint, the Defendant Salve qualified as an employer and/or covered entity pursuant to applicable provisions of The Rhode Island Civil Rights Act of 1990, R.I.G.L. §42-112-1 et seq.; and The Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1 et seq.

11.     At all times material to this action, Plaintiff was an individual, employee, and/or person covered under the terms and provisions of The Rhode Island Civil Rights Act of 1990, R.I.G.L. §42-112-1 et seq.; and The Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1 et seq.

Case Number: NC-2023-0188
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 5 of 42 PageID #: 52

4

12.     On information and belief, and at all times pertinent to this Complaint, managers and supervisors engaging in discriminatory workplace conduct and tortious mistreatment of the Plaintiff, were each a person acting in furtherance of the interest of, on behalf of, and as the agent of the Defendant Salve, with respect to all allegations of this Complaint, and the Defendant Salve actually knew or should reasonably have known of their unlawful conduct.

## FACTS COMMON TO ALL COUNTS

13.     Plaintiff is a white female. Plaintiff identifies as heterosexual. Plaintiff is a Christian.

14.     Plaintiff was born X-X-1964, and at all times cited in the complaint was in the state and federal legally protected age category.

15.     At the time of the events at issue in this matter, Plaintiff held the position of a full tenured professor of Spanish with 23 years of service to the university.    She was granted tenure in 2004.

16.     Plaintiff maintained a positive record of employment with the Defendant Salve and believed, in good faith, that she would enjoy a lengthy career in her position especially in light of her tenured status. A review of Plaintiff's evaluations over the last several years prove that there have been no negative trends in her performance or deviations of her adherence to her teaching responsibilities.

17.     Effective January 3, 2022, Plaintiff was informed by Salve that she was terminated allegedly "for cause" including what the university characterized as "continued misconduct", failure to communicate, and failure to comply with the requirements of a faculty member in accordance with the Faculty Manual.

Case Number: NC-2023-0289
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS   Document 1-3   Filed 09/13/23   Page 6 of 42 PageID #: 53

5

18.     Plaintiff's record is devoid of contemporaneous documented misconduct of any kind. The allegations and evidence upon which the Defendant Salve and Defendant Board of Trustees have primarily relied with respect to Plaintiff's termination were actively solicited by administrative personnel *after* the decision had already been made to terminate the Plaintiff without adequate cause, in an *ex post facto* effort to lend an air of legitimacy to an unsupportable discharge decision.

19.     There is no indicia that Plaintiff was incapable of fulfilling basic faculty responsibilities, working effectively with colleagues, or managing communications with students and staff in a productive manner. Despite the university's attempt to portray alleged misconduct in the course of Plaintiff's termination process, there is no evidence that the Plaintiff had a history of problematic performance with the Defendant Salve.

20.     On the same date of Plaintiff's termination, without benefit of any conference with the President of the university (which occurred on January 25, 2022), and prior to any proceedings before the Faculty Hearing Committee, Plaintiff was offered a severance agreement, requiring her to waive all of her potential claims. This offer was made before the university had taken any meaningful steps to apprise the Plaintiff of the nature or specific facts underlying her alleged misconduct, indicating that SRU's termination decision was a *fait accompli*, notwithstanding the evidence.

21.     There is no evidence that there was adequate cause for Plaintiff's dismissal.

22.     The university failed to specify any of the alleged 'continued misconduct' cited in its termination letter to the Plaintiff.

23.    Plaintiff's termination was triggered by what the university alleged was an incident on November 15, 2021 during one of Plaintiff's classes.    President of the Defendant university, Kelli Armstrong has asserted in writing: "the catalyst for my recommendation to terminate Dr. Crawford's employment at Salve results "from the class in question," referencing the class conducted by Plaintiff on the above-referenced date. She continued by saying that Plaintiff's actions are "a barrier to student learning and antithetical to Salve's Mercy mission." She goes on to falsely assert that the past seven years of Plaintiff's employment have been "fraught" with misconduct in the classroom and unacceptable teaching practices, allegations which are demonstrably untrue. Plaintiff's record is devoid of any indication of discipline regarding such belatedly alleged misconduct. As stated above, Plaintiff is a Christian and has been devoted throughout her career at SRU to the so-called Mercy mission of the Catholic based university. The false statements that have been disseminated against her have created the impression that she is an adherent of hate and intolerance.

24.    On November 15, 2021, during Plaintiff's class in Spanish American Culture and Civilization, Plaintiff led a discussion on Gender and Sexuality in Latin America. As part of this class, she assigned to her students for their review, a paper authored and published during or about 2003. This reading was consistent with the course content, as approved by the SRU administration, and examined the link between gender, sexuality and power in Latin America. Plaintiff asked her students to supplement assigned text readings with a additional reading that used the word "transvestites," a word the context of which has evolved since publication of the text in 2003. As noted above, the

text examines the link between gender, sexuality and power in Latin America, a pertinent topic with respect to the applicable course.

25.    Dr. Crawford followed-up with a brief class discussion regarding LGBTQ+ rights in Latin American countries and the proposition that these rights have not evolved to the level such rights have evolved in the United States.

26.    The assigned reading was directly related to the content of Plaintiff's course for adult college level students.

27.    During the class in question, a student who was later identified by the university as "Student D" (whose actual identity has been concealed by the SRU) appeared to become upset because Plaintiff, who he described as a "cis White woman," used a reading that contained the word "transgender."    The student objected to the term "transgender" and had an outburst in class.

28.    Consistent with prevailing viewpoints as espoused by GLAAD (Gay and Lesbian Alliance Against Defamation) it is necessary that there be terms "to start with" in the context of conversations about groups that have suffered discrimination or bias.

29.    On November 16, 2021, Student D sent a message to Nancy Schreiber, University Provost and Vice President of Academic Affairs that he was "informed" by the Chair of the Modern Languages Department, Defendant Mitchell, to "mail [her] a formal complaint."

30.    Student D followed through on Defendant Mitchell's directive and wrote a lengthy letter of complaint to the Provost. In his/her complaint the student explained his/her view that the article was "inappropriate and there are better ones out there....it

would even be better if we read one directly from a latinx (sic) author instead of an Englishmen (sic) describing what happens in Latin America."

31.    This student states that he informed the Plaintiff that he was a "transgender gay man" and she [Plaintiff] is a white straight cis woman, so she cannot tell me [Student D] what I [Student D] find offensive."

32.    He went on to state that a student "found a book that was similar to the one we read but it was written by a Latinx author," suggesting that the students of SRU should have authority to override the syllabus and curriculum as designed by the professor. This student went onto state "word travels" and there are "several students within the language department hearing about this incident as well as all of the friends of people in our class."

33.    He went onto refer to the Plaintiff as "ignorant" and soliciting the Provost to "take action" against Plaintiff. This letter, as were others, was demonstrably written at the direction and/or suggestion of Defendant Mitchell.

34.    Another student, labeled as Student C by the Defendant university similarly stated that he was "directed by an advisor [Defendant Mitchell] to email Provost Schreiber about "derogatory language regarding transgender people in Plaintiff's class."   Student C stated that he/she found the language at issue to be "triggering" and that Student C believed that the classroom should be a "warm and safe space" which apparently he/she asserted it was not.

35.    Student C stated that she has heard multiple comments by teachers [other than the Plaintiff] and has "let them fly by." She indicated that her letter to the Provost stemmed from "seeing the reaction" of other unidentified students.

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS   Document 1-3   Filed 09/13/23   Page 10 of 42 PageID
#: 57

9

36.     The record is devoid of any evidence that Dr. Crawford had a history of problematic conduct or student complaints regarding hateful speech. Nevertheless, SRU used the above alleged incident as the "catalyst" [in the language of President Armstrong] for Plaintiff's termination and an onslaught of baseless and defamatory accusations towards the Plaintiff, and the chilling of her ability to teach freely and without censor. Negative comments against the Plaintiff appear to have been solicited and encouraged by Defendant Mitchell, her Department Chair (as described below) and other Defendants.

37.     Specifically, Defendant Mitchell coordinated and participated in a meeting in his office with students regarding Plaintiff on November 15, 2021 (following the class in question).

38.     This meeting was at Defendant Mitchell's overture in what is believed, based on good faith information and belief, to be an effort to coordinate and rally student sentiment against the Plaintiff a member of his department.

39.     On good faith information and belief, Defendant Mitchell undertook this conduct in an effort to retaliate against the Plaintiff with whom he had a protracted history of disagreements. At one point Dr. Crawford found it necessary to file a grievance against Mitchell.

40.     On information and belief, during the above-referenced meeting with students, Defendant Mitchell encouraged and/or directed the students to submit written statements to the university criticizing the Plaintiff. Several students proceeded to draft and submit written "complaints" against Dr. Crawford to the Provost and President of the University (as described above).

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 11 of 42 PageID
#: 58

10

41.    These statements were unsigned or have had signatures redacted, were unverified/unsworn and undated.

42.    These statements reflected in both tone and content allegations that were similar indicating that they were the product of a deliberately coordinated effort by students, influenced by certain faculty and administrators, to unfairly undermine the Plaintiff's reputation and denigrate her performance.

43.    The university subsequently scheduled a zoom meeting for Plaintiff's students to "share what occurred in classes" this semester with the Plaintiff. The university did not inform Plaintiff of the scheduling of this meeting, and did not allow Plaintiff to participate in the zoom meeting. SRU did not sequester the students and instead had them meet as a group. Such action by the university created a "gang" mentality and tainted subsequent statements and any investigation of the matter.

44.    The university alleged that the students in the zoom meeting described Plaintiff as using "offensive language and hateful rhetoric" towards the LBGTQ+ community and people of color. The university provided no opportunity to the Plaintiff to respond to these allegations or to defend herself, prior to her termination. Also, as noted above, the sole "evidence" considered by SRU were redacted, unsworn letters, drafted under clearly unfair and tainted circumstances.

45.    SRU took no steps to properly investigate this matter.

46.    SRUs Title IX coordinator failed to fully investigate, clarify or verify the allegations in this matter, prior to issuing a summary "Notice" to Plaintiff restricting certain of her duties, as referenced in the following paragraph.

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 12 of 42 PageID
#: 59

11

47.    Plaintiff was informed by the President of the university that an email dated November 22, 2021, was issued to Plaintiff by the Title 1X coordinator regarding the allegations in this matter. Plaintiff has no recollection of ever receiving such an email.

48.    The email from Timothy J. Dunn, Title IX Coordinator, is dated November 22, 2021, implicating that he completed an investigation in less than a week from the date of the "catalyst" class on November 15, 2021. There is no indication in Dunn's statement that he conducted *any* thorough investigation, other than to assert that unnamed students alleged that the Plaintiff made comments that were derogatory toward "a population based on that populations' [sic] gender identity or expression." He then goes on to talk about several of the referenced students in Plaintiff's class being members of the "Spanish Club" who expressed that they "do not feel safe around [Plaintiff]." There is no indication that Dunn's "Notice of Interim Action" followed his giving the Plaintiff an opportunity to respond. In fact, Dunn did not even speak to the Plaintiff regarding the matter. Dunn notes however, that the "Notice" shall not be construed to indicate that the university has taken any disciplinary against the Plaintiff, even though Plaintiff was ultimately fired six weeks later.

49.    Plaintiff vehemently denies any misconduct as referenced in Dunn's perfunctory "Notice."

50.    In its termination of the Plaintiff, the university failed to comport with its own proffered basic principles of academic freedom, tenure and due process and the specific tenets formulated by the American Association of University Professors (AAUP), of which Defendant Mitchell is the president of the local chapter.

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 13 of 42 PageID
#: 60

12

51. The AAUP issued a formal letter finding that the university's termination of the Plaintiff deviated from the recommended institutional protocols and regulations pertaining to involuntary terminations of faculty appointments.

52. The AAUP stated that the university deviated from Regulation 5 of the 1940 Statement of Principles on Academic Freedom and Tenure (jointly formulated by the AAUP and the American Association of Colleges and Universities), *inter alia*, as follows:

a. First, the university's procedures did not include an "informal inquiry by the duly elected faculty committee, which may, if it fails to effect an adjustment, determine whether in its opinion dismissal proceedings should be undertaken, without its opinion being binding upon the president…" (Regulation 5b)

b. A second departure from Regulation 5 is that the affected faculty member will be "considered suspended from the date of termination notification until the applicable appeals process/grievance is completed" and that suspension will be without pay. This provision is in stark contrast to Regulation 5c(1) which states that "Pending a decision by the hearing committee, the faculty member will be suspended, or assigned to other duties in lieu of suspension, only if immediate harm to the faculty member or others is threatened by continuance. Before suspending a faculty member, pending an ultimate determination of the faculty member's status through the institution's hearing procedures, the administration will consult with the Faculty Committee on Academic Freedom and Tenure concerning the proprietary, the length and the other conditions of suspension…salary will continue during the period of the suspension.

c. A third serious departure is the provision allowing dismissal to occur prior to an appropriate dismissal proceeding. As reflected in Regulation 5a, the dismissal of a

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 14 of 42 PageID
#: 61

13

faculty member occurs only following such a proceeding and will be preceded by a statement of charges and the individual concerned will have the right to be heard initially by the elected faculty hearing committee.

d. A fourth departure from Regulation 5 is the provision that the President (or representative) prepares and presents the grounds for dismissal. The burden will then shift to the Complainant to prove that the grounds submitted by the President are irreparably and negatively affected by prejudicial substantial errors. By contract, Regulation 5c(8) makes clear that the burden of proof that adequate causes exists rests with the institution and will be satisfied only by clear and convincing evidence in the record as a whole.

53.    The above referenced AAUP sections were drafted to ensure adherence to the procedural standards necessary for the protection of tenure and, by extension, academic freedom. The Defendant's faculty manual fails to comport in many significant respects to Regulation 5.

54.    Plaintiff appealed her termination pursuant to the requirements of the university's Faculty Manual. Prior to the hearing before the Faculty Committee, the Plaintiff's email account was deactivated and she had no access to messages in order to adequately prepare for the hearing.

55.    Plaintiff received no salary pending her appeal as her salary ceased on the date of her termination, contrary to established SRU protocols.

56.    Plaintiff participated in an appeal hearing before the university's Faculty Committee

57.    During the hearing, Plaintiff was inappropriately forced to bear the burden of *disproving* the university's allegations, undermining principles of academic academic

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 15 of 42 PageID
#: 62

14

freedom and due process. The university had the burden of demonstrating adequate cause

for dismissal. The burden of proof that adequate cause existed to sustain Plaintiff's

discharge should have rested with the university based on a clear and convincing

standard of record evidence considered as a whole. The burden shifting violated

Plaintiff's due process rights among other rights, as supposedly ensured by faculty

policies and the university's alleged commitment to its Mercy mission.

58.     The normative standards established by the AAUP maintain that tenure is

an indefinite appointment that can be terminated only "for cause" as demonstrated in a

predetermination hearing of record before an elected faculty body with the burden of proof

resting with the administration.

59.     The university's Faculty Manual's dismissal for cause procedures failed to

conform with normative academic standards, absent institutional regulations affording

such a procedure prior to dismissal. Plaintiff's tenure status was apparently in name only—

violating any applicable contract regarding her tenured status, as well as the formally stated

guarantees of free speech and academic freedom existing in SRU's governing documents

and the Faculty Manual.

60.     Plaintiff's dismissal was used by the university as a device to restrain her

from exercising discretion as a faulty member, restrict her academic freedom and her rights

as an individual.

61.     Dr. Crawford was terminated without benefit of a suspension, absent any

evidence that she posed immediate harm to the academic community or her students.

62.     Although Dr. Crawford was ultimately permitted, at her insistence, to have

the above-referenced hearing before a Faculty Committee Board, she was not allowed to

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 16 of 42 PageID #: 63

15

have an advisor or legal counsel speak on her behalf. To Dr. Crawford's knowledge, no verbatim record of the hearing has ever been produced to her.

63.     The action to dismiss a professor without having demonstrated adequacy of cause in a hearing of record before a duly constituted faculty body is fundamentally at odds with the AAUP's 1940 Statement of Principles on Academic Freedom and Tenure.

64.     Upon reasonable information and belief, the Defendant Salve revised its Faculty Manual subsequent to the Plaintiff's termination to meet the standards outlined by the AAUP, but refused to apply them in the case of the Plaintiff, motivated by a deliberate intention to drive her from her employment.

65.     In a decision dated June 7, 2022, the Faculty Committee affirmed the Plaintiff's termination. Even so, the Committee stated as follows:

*"It is clear to this Committee that the process to investigate Dr. Crawford was prejudiced and some of the information collected by the administration for the cause of dismissal was biased. The addition of two more reasons for the dismissal in the April summary sent to the Committee suggests that the investigation carried on after the complainant was terminated in January and never fully explained. It appears that testimony from the department, alumni and students, was not solicited in an independent way but more haphazardly and unchecked in the Fall 2021 classroom incident, the views of all members of the class were not solicited. It was unclear even if a proper Title IX investigation was conducted yet sexual harassment was included in the reason for dismissal. Issues in the modern language department have been long standing and largely ignored by previous administration and human resources."*

66.     The decision was not unanimous, 3-2 in favor of the administration. The dissenting Faculty Committee Board opinion issued on behalf of two members stated that the "administration's firing of [Plaintiff] was unreasonable, unfair and prejudicial." It also asserts that the firing of Dr. Crawford, a full, tenured professor for cause is not "the solution" and the way in which the hearing process took place was not fair and reasonable to Dr. Crawford.

67.     The university cited four criteria warranting a tenured professor's dismissal for cause: incompetence; violation of contract; negligence and sexual harassment.

68.     No persuasive evidence was presented to the Faculty Committee to substantiate or even suggest that Dr. Crawford had engaged in sexual harassment, was incompetent, negligent or violated the applicable contract.

69.     The administration failed to show any adequate evidence for these charges and, in the words of the dissenting Board members, "look[ed] strained in attempting to do so." Dissenting faculty members agreed that Dr. Crawford's performance was unfairly and unjustly manipulated.

70.     Dr. Crawford's performance has been twisted and manipulated to neatly fit into the categories needed by the university to dismiss her--- resulting in a prejudicial proceeding. This proceeding was clearly driven by a "mob" intent upon cancelling Dr. Crawford and destroying her career because certain individuals did not like her teacher methods or what it perceived as her right to teach at all in certain areas. Upon information and belief, the Provost of the university and Plaintiff's Department Chair (Defendant Mitchell) informed Plaintiff's students at the start of the semester that they should keep a

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS     Document 1-3     Filed 09/13/23     Page 18 of 42 PageID
                                    #: 65

17

running list of criticisms about the Plaintiff and her teaching in what can only be described as a deliberate effort to sabotage her career and reputation.

71.     The university encouraged and endorsed a discriminatory attack on Dr. Crawford. For example, certain students took the position that Dr. Crawford had no right to teach about certain cultural norms in Latin America because she was "cis white woman."

72.     The Defendants took intentional and deliberate actions to discriminate against the Plaintiff because she was a member of several "dominant" or "majority" groups (white, straight) in favor of members of a "minority" or "historically disadvantaged" group.     The university chose to provide students a "warm environment" over a tenured faculty member's right to academic freedom and a non-discriminatory work environment.

73.     On information and belief, the university replaced Plaintiff with respect to at least part of her teaching schedule with a male significantly younger than Plaintiff who is believed to be the husband of Defendant Alarcon-Arana.

74.     The Plaintiff along with another senior faculty member have been referred to as "old school" because of their request that students use their titles and not their first names. One student was informed that she may want a different advisor than the Plaintiff and one who was capable of "fresh ideas and perspectives" in a clear criticism of her age. Plaintiff was also criticized for not using gender neutral endings in Spanish and told this was because she was "older."     The university repeatedly failed to provide the Plaintiff office assignments by seniority, instead opting to provide favorable office space to younger/junior faculty members.

75.     As part of the dismissal process, letters were submitted to the university by certain of Plaintiff's colleagues, including Defendants Alarcon-Arana, Defendant

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 19 of 42 PageID
#: 66

18

Mitchell and Defendant Colbert-Cairns. Notably, Defendant Colbert-Cairn's letter contains no specific date and only referenced "April 2022" and is unsigned. Similarly, the letter of Defendant Alarcon-Arana is not dated.

76.    These letters contained defamatory, discriminatory and slanderous statements. (See below) No remedial action was taken by the university to address or investigate the defamatory statements made towards Dr. Crawford by faculty and such letters remain part of Dr. Crawford's official file.

77.    As part of the dismissal process, Dr. Crawford submitted numerous letters from colleagues *attesting* to her character and professional performance. These letters were all signed, dated and appropriately verified unlike the letters proffered by the university against Dr. Crawford which were redacted, undated and patently unreliable. The university gave no weight to the evidence in support of Dr. Crawford giving all weight and deference to the purported "evidence" against her.

78.    There is ample evidence to indicate that other faculty members have been treated with far greater deference that Dr. Crawford in the face of more serious accusations.    For example, upon information and belief, a male administrator of the Modern Languages Department was involved in a concerning legal matter. The university allowed this male to "step down" from his position and awarded him full tenure, two sabbaticals and several course reductions.

79.    The Plaintiff was the first and only tenured full professor subject to termination proceedings.

80.    The university denied Dr. Crawford mediation despite mediation being dictated by the applicable contract and the University's Faculty Manual.

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Document 1-3     Filed 09/13/23     Page 20 of 42 PageID
#: 67

19

81.     Plaintiff was subjected to serious, offensive, humiliating and defamatory aspersions against her character by the university, its agents and students. She was harassed and singled out for termination because of her gender, color, race, sexual orientation and age, and retaliated against because she sought to teach in an environment of free speech and academic freedom.

82.     On June 27, 2022, the Plaintiff appealed the Faculty Committee Decision to affirm her termination, to the SRU Board of Trustees.

83.     The Board affirmed her termination despite the fact that there was no persuasive or reliable evidence supporting her discharge.

84.     Plaintiff has suffered significant and palpable emotional distress with physical symptoms as a result of the Defendants' treatment. She has anxiety, stress, trouble sleeping, sick stomach and other emotional and physical manifestations due to the Defendants' misconduct.

85.     Plaintiff has not secured comparable new employment and her professional and personal reputation as well as future employment prospects have been irreparably damaged by the Defendants.

86.     Plaintiff's actions have been deliberately mischaracterized in the Defendants' effort to defame her and chill her right to academic freedom and her due process and contractual rights have been thwarted by the Defendants' misconduct.

87.     The Defendants' conduct, as referenced in the preceding paragraphs, reflects, in both purpose and effect, a blatant, willful, and/or malicious pattern of discrimination and unlawful treatment against the Plaintiff.

Case Number: NC-2023-0189
Filed in Newport Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 21 of 42 PageID
#: 68

20

88.     Such conduct has involved an intentional, reckless, and/or callous indifference to the statutorily protected rights of the Plaintiff. The Defendants knowingly and purposefully subjected the Plaintiff to humiliating, discriminatory treatment as a result of her protected characteristics and subjected her to retaliation.

## COUNT I
## BREACH OF CONTRACT
### As to Defendant University and Defendant Board of Trustees

89.     Paragraphs 1-88, above, are incorporated herein in their entirety.

90.     The Plaintiff and Defendants were parties to an employment contract.

91.     The explicit terms of the contract, referenced above, as expressed orally and in written documents, created contractual obligations between the parties for the Plaintiff to hold the position of a tenured faculty member.

92.     The contractual obligations of the Defendants, referenced in the preceding paragraph, guaranteed to Plaintiff, in consideration for her services, indefinite academic appointment under specific terms and conditions of employment and, by legal implication, assured that she would be permitted to perform the requirements of her position without being subject to a hostile/discriminatory environment and other retaliatory mistreatment.

93.     Defendants breached the contract between the Parties by, *inter alia,* unliterally depriving Plaintiff of the terms and benefits of the contractual relationship; terminating her; retaliating against her; and refusing to permit her a fair and reasonable opportunity to review her appeal through university processes to which she was entitled by contract and pursuant to the university's Faculty Manual as a faculty member with tenure.

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 22 of 42 PageID
                                      #: 69

                                                                                    21

94.     Defendants breached the contract between the Parties by, *inter alia*,

applying processes and procedures to Plaintiff's termination which failed to comport to

the normative standards established by the AAUP which maintain that tenure is an

indefinite appointment that can be terminated only for cause as demonstrated in a

predetermination hearing of record before an elected faculty body with the burden of

proof resting with the administration. In light of the university's Faculty Manual's

dismissal for cause procedures failing to conform with normative academic standards,

absent institutional regulations affording such a procedure prior to dismissal, Plaintiff's

tenure status appears to be in *name only*—violating any applicable contract regarding her

tenured status.

95.     Plaintiff was misled by the university to believe that she held actual

tenured status when, in light of the university's failure to comport to policies and

procedures which support indefinite appointment, such contractually promised tenured

status was illusory.

96.     The Defendants' breach of its contractual relationship(s) with the Plaintiff

has caused and will continue to cause the Plaintiff lost employment, lost income, lost

benefits, damage to her personal and professional reputations, emotional distress and

other damages.

### COUNT II -- Intentional Infliction of Emotional Distress
### As to all Defendants

97.  Paragraphs 1-96, above, are incorporated herein in their entirety.

98.     At all relevant times, the above-named Defendants knew or should have

known that its unfair and unlawful conduct towards the Plaintiff, i.e. summarily terminating

her from her tenure faculty position, making harmful and defamatory statements about the

Case Number: NC-2023-0189
Filed in Newport County Superior Court 00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 23 of 42 PageID
Submitted: 6/7/2023 3:51 PM                                    #: 70
Envelope: 4140534
Reviewer: Sandy L.

22

Plaintiff, and other conduct would result in the Plaintiff's physical and emotional distress. Despite said knowledge, Defendants engaged in deliberate conduct it knew would result in harm to the Plaintiff.

99.    By deliberately interfering with the Plaintiff's employment and retaliating against the Plaintiff by refusing to grant her reasonable request for a fair, prompt and objective hearing, the Defendant University and Defendant Board caused the Plaintiff to be deprived of sustainable income and other benefits of her position as a tenured faculty member, causing her extreme emotional distress. The Defendants acted intentionally, recklessly and/or with deliberate indifference to a substantial probability that severe emotional distress would result to the Plaintiff.

100.    The Defendants' actions towards Plaintiff as set forth above, are evidence of a pattern of unlawful behavior which further constitutes extreme and outrageous conduct.

101.    The Defendants' conduct was outrageous in character and extreme in degree, and went beyond all possible bounds of decency and is utterly intolerable in a civilized community.

102.    The extreme and outrageous conduct of the above-named Defendants toward Plaintiff was done in a willful and wanton manner, and constituted a disregard for the rights and well-being of Plaintiff.

103.    There was clear causal connection between the wrongful conduct and the emotional distress suffered by the Plaintiff.

104.    As a direct and proximate result of the above-named Defendants' extreme and outrageous conduct, Plaintiff suffered severe emotional distress. This emotional

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 24 of 42 PageID
#: 71

23

distress was accompanied by severe physical symptomology which was causally related to the Defendant intentionally or recklessly engaging in extreme or outrageous conduct, as recounted in the Facts above. The physical manifestations of Plaintiff emotional injuries include but are not limited to:

- Lack of sleep
- Anxiety
- Complaints of fatigue
- Depression
- PTSD

105. Because the Defendants' extreme and outrageous conduct toward Plaintiff was improperly motivated, intentional, willful and wanton, Plaintiff is entitled to punitive/exemplary damages in addition to compensatory damages.

WHEREFORE, Plaintiff prays for the relief in her favor and against the Defendants, jointly and severally.

## COUNT III—Defamation/False Light/Defamation Per Se
## As to all Defendants

106. The allegation in paragraphs 1-105, above, are incorporated herein by reference, in their entirety.

107. Defendants engaged in deliberate or negligent conduct by communicating or encouraging the communication of unsupportable written statements purporting to be fact(s) to third parties regarding the Plaintiff. Such statements included false and derogatory comments designed to impugn the Plaintiff's professional reputation, capabilities and performance.

Case Number: NC-2023-0180
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS     Document 1-3     Filed 09/13/23     Page 25 of 42 PageID
#: 72

24

108.    Defendants engaged in deliberate or negligent conduct by

eliciting/suggesting written statements from students, alumni and/or faculty members that

were derogatory to the Plaintiff and which were elicited under circumstances which

rendered the statements unreliable, unverifiable and biased. Such written statements

included false comments designed to impugn the Plaintiff's professional reputation,

capabilities and performance.

109.    Students were encouraged and motivated by the Defendants to engage in

deliberate or negligent conduct by forwarding written statements about the Plaintiff

which are demonstrably false and undertaken with the purpose of *permanently* destroying

Dr. Crawford's tenured employment status and her career in education. The text of these

statements, none of which are signed (or have had signatures redacted), indicate that the

statements were drafted in concert and were produced at the insistence and/or the

suggestion of the Chair of the Plaintiff's academic department and other faculty members

and administrators.

110.    The statements were made or published by Defendants in an effort to

support the pretextual position that the Plaintiff had poor performance and ascribed to her

hateful and discriminatory characteristics—for example that she was transphobic,

homophobic and racist. This conduct was taken by the Defendants' in an attempt to

discriminate and retaliate against the Plaintiff and to support its baseless decision to

terminate the Plaintiff "for cause," while chilling her rights to academic freedom and

free speech.

111.    The defamatory statements were about the Plaintiff.  Such statements, made and/or elicited by authoritative university personnel, either in word or implicated by action, included assertions, without basis, that Plaintiff:

a.  used offensive language and hateful rhetoric toward the LGBTQ+ community and people of color;

b.  was non-responsive to student questions, displayed a lack of responsiveness to emails from students, inconsistently graded, hostile and disrespectful responses to student questions, gave assignments that did not follow the syllabus, and displayed a lack of focus on the academic subject by engaging in long and irrelevant discussions about her personal life and that such behavior was characteristic of Dr. Crawford's interactions with students over the past 7 years (Notably, one student remarked that Dr. Crawford spent an inordinate amount of time discussing what she had for breakfast.  This student failed to note that the lesson plan for the day revolved around food in Latin American cultures, including breakfast.);

c.  used a transgender slur multiple times;

d.  was hostile and belittling;

c.  made "disturbing and racist comments";

d.  used the term "retard" to describe the disabled and elderly;

e.  was consistently rude and insensitive and made students feel unsafe in class;

f.  had incidents of troubling communication, hostile, belligerent behavior and unprofessional student conduct;

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 27 of 42 PageID #: 74

26

g.  had a 7 year history fraught with peer and administrative grievances,

misconduct in the classrooms, poor to unacceptable teaching practices, strained

interpersonal relationships with students, staff and faculty;

      h.  violated professional trust;

      i.  used derogatory language regarding transgender people;

      j.  that she used terminology equivalent to the "N" word;

      j.  is "insensitive";

      k.  is "ignorant';

      m.  used slurs to describe people with developmental disabilities;

      n.  displayed a lack of professionalism;

      o.  visibly hurt students;

      p.  always used the "r word";

      q.  said that she wanted to "take away someone's Jamaican card because they did

not like bananas";

      r.  was disrespectful and inhumane;

      s.  was extremely offensive to all students in her class but especially those in the

LGBTQ+ community;

      t.  made transphobic and homophobic comments;

      u.  made anti-Semitic remarks;

      v.  was a "parasite."

      112.  Defendant Esther Alarcon-Arcana is believed to be identified by the

Defendants, on good faith information and belief, as Witness No. 2. She falsely stated in

writing to university authorities, by way of example but not limitation, as follows:

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS   Document 1-3   Filed 09/13/23   Page 28 of 42 PageID #: 75

27

a. Plaintiff's focus was to undermine the modern languages department;

b. Plaintiff bad mouthed male colleagues;

c. students refused to be in Plaintiff's class;

d. Plaintiff made "transphobic" comments;

e. Plaintiff made "homophobic" comments;

f. Plaintiff made "anti-Semitic" comments;

g. Plaintiff made "xenophobic" comments to a cleaning person;

h. Plaintiff humiliates people based on sexual orientation and ethnicity;

i. Plaintiff is a "toxic person";

j. Plaintiff is a "parasite";

k. Plaintiff "abuses" students;

l. Plaintiff committed "barbarities" against students;

113. Defendant Emily Colbert-Cairns is believed to be identified by the

Defendants, on good faith information and belief, as Witness No. 3. She falsely stated in

writing to university authorities, by way of example but not limitation, as follows:

a. Plaintiff "sewed acrimony" among students, faculty and staff;

b. Plaintiff made "anti-Semitic" remarks.

114. A student described by SRU as Witness No. 4. falsely stated in writing to

university authorities, by way of example but not limitation, as follows:

a. Plaintiff said that "all Latino men are trash and sleep around";

b. Plaintiff said that people with Latin American indigenous ancestry as "less-

than";

c. Plaintiff said that "Spaniards are trash" and "Spaniards are assholes";

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS     Document 1-3     Filed 09/13/23     Page 29 of 42 PageID
#: 76

28

d. Plaintiff asked if the witness could find "clothes in Spain" because she was

overweight;

    e. Plaintiff said "gay people should never have kids";

    f. Plaintiff said that "gay men are feminine";

    g. Plaintiff made "anti-Semitic remarks";

    h. Plaintiff referred to a client as a "dirty snake";

    i. Plaintiff "goes against all policies as a professor and blatantly ignores the

Mercy Mission" of the university.

    115.    The statements were false and made intentionally with the knowledge that

they were false and with the purposeful intent of misleading the university community

and the general public, to embarrass and humiliate the Plaintiff, to damage her reputation,

to subject her to a false and misleading light in the public view and to result in her

termination.

    116.    The statements and actions by Defendants reflected a defamatory

implication regarding the Plaintiff.

    117.    The defamatory implication was intended by the Defendants.

    118.    Due to the circumstances surrounding the publication of the statement(s),

there was conveyed a defamatory implication to someone who saw/heard it other than

Plaintiff, including other faculty, administrators, staff, students, alumni, the general

university community, and the Plaintiff's professional peers and associates.

    119.    In communicating/publishing the statement(s), the Defendants acted with

actual malice.

    120.    Defendants made or published the statements in question.

Case Number: NC-2023-0189
Filed in Newport/Bristol Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS     Document 1-3     Filed 09/13/23     Page 30 of 42 PageID
#: 77

29

121.    Defendants designed and/or intended the defamatory essence conveyed to third parties.

122.    Such statements had the result of lowering the esteem in which Plaintiff was held in her field of higher education.

123.    Conduct by the Defendants was intentionally undertaken to

demean and falsely reflect on Plaintiff, her professional acumen, and falsely characterized her as not competent in her field.

124.    Defendants' conduct resulted in damage to Plaintiff's professional

and personal reputations. Plaintiff continues to suffer from humiliation, embarrassment, and emotional distress and to suffer severe and ongoing financial loss and hardship.

125.    Defendants made false statements which invaded Plaintiff's

privacy by giving the public and various third parties a misleading impression of Plaintiff and publishing false and misleading facts about the Plaintiff.

126.    The defamatory conduct undertaken by the Defendants adversely

reflected on the Plaintiff's professional ability, profession and trade.

127.    Defendants' actions were undertaken in a reckless manner, or

intentionally for the purpose of causing, and had the effect of causing Plaintiff to suffer severe emotional distress, which distress has been and will continue to be accompanied by a variety of physical and emotional manifestations.

128.    As a direct, proximate, foreseeable, and/or intended result of

Defendants' unlawful conduct, Plaintiff was shocked, humiliated, embarrassed, and endured pain and suffering of mind and body, and has suffered, and will continue to

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS   Document 1-3   Filed 09/13/23   Page 31 of 42 PageID #: 78

30

suffer in the future, extreme physical and emotional distress, with resulting physical and emotional manifestations.

WHEREFORE, Plaintiff prays for the relief in their favor and against the Defendants, jointly and severally.

### COUNT IV
### Tortious Intentional Interference with a Contractual Relationship
### As to All Defendants

129.     The allegation in paragraphs 1-128, above, are incorporated herein by reference, in their entirety.

130.     At all relevant times, an express and/or implied contractual relationship or expectancy of a continued employment relationship existed between Plaintiff and the university.

131.     At all relevant times, Defendants knew and/or should have known of the existence of the aforementioned contractual relationship between Plaintiff and the university.

132.     As set forth herein, Defendants had intent to interfere with the contract(s) of the Plaintiff and the university and unlawfully interfered wither her expectation of continued employment.

133. As set forth herein, Defendants actually interfered with the contract(s) or expectancy of employment of the Plaintiffs and the university.

Case Number: NC-2023-0189
Filed in Newport/Bristol Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS   Document 1-3   Filed 09/13/23   Page 32 of 42 PageID #: 79

31

134. Defendants' intentional interference with the aforementioned contractual relationship was based upon their own self-serving motives, objectives, desire to retaliate against the Plaintiff and wholly improper.

135. The Defendants' intentional interference with the aforementioned contractual relationship was a direct and proximate cause of the injuries, damages and harm suffered by Plaintiff.

136. Because Defendants' conduct towards Plaintiffs was improperly motivated, and was intentional, willful and wanton, Plaintiff is entitled to punitive/exemplary damages in addition to compensatory damages.

WHEREFORE, Plaintiff prays for the relief in her favor and against the Defendants, jointly and severally.

## COUNT V
### RHODE ISLAND CIVIL RIGHTS ACT OF 1990
### R.I.G.L. SECTION 42-112-1
### As to Defendant University and Defendant Board of Trustees

137. The allegations contained in Paragraphs 1-136 above are incorporated herein by reference in their entirety.

138. The Defendants' discriminatory conduct, policies, and practices are violative of the provisions of the Rhode Island Civil Rights Act of 1990, R.I.G.L. 42-112-1 et seq., by:

a. interfering with Plaintiffs' right to avail herself of the full and equal benefit and protection of state and federal laws intended to prevent discrimination based on gender, age, race, color, religion and sexual orientation;

b. depriving Plaintiff of the status, benefits, privileges, and other terms and conditions accruing to the employment relationship to which she was entitled;

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS     Document 1-3     Filed 09/13/23     Page 33 of 42 PageID #: 80

32

c. treating Plaintiff in a hostile, demeaning, and otherwise unlawful manner based on her protected characteristics;

d. causing Plaintiff lost income, benefits and damage to her professional and personal reputations;

e. causing Plaintiff humiliation, emotional distress and harm to personal reputations.

139. The unlawful practices engaged in by the Defendants were motivated by impermissible and unlawful considerations concerning Plaintiff's protected characteristics. Such practices include, but are not limited to, the Defendants:

a) subjecting Plaintiff to discriminatory terms and conditions of employment because of her gender/race/color/age/sexual orientation and religion;

b) subjecting Plaintiff to discriminatory and defamatory conduct;

c) termination of Plaintiff.

140. But for the Defendants' intent to discriminate against Plaintiff based on her protected characteristics, Defendants would not have subjected her to discriminatory conduct.

141. The Defendants purposefully, maliciously, and without justification or excuse, took discriminatory action with respect to Plaintiff's employment because of Plaintiff's gender/race/color/age/sexual orientation and religion.

142. The Defendants purposefully, maliciously, and without justification or excuse, took discriminatory action with respect to Plaintiff's employment. The Defendants' conduct has unlawfully deprived Plaintiff of her employment, income, benefits, privileges, promotions, and other terms and conditions accruing to the

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS   Document 1-3   Filed 09/13/23   Page 34 of 42 PageID #: 81

33

employment relationship to which she was entitled; has caused harm to Plaintiff's reputations; and has caused her humiliation, as well as physical and/or emotional injury.

WHEREFORE, Plaintiff prays that judgment be entered herein against Defendants, jointly and severally.

## COUNT VI
### RHODE ISLAND FAIR EMPLOYMENT PRACTICES ACT
R.I.G.L. Section 28-5-1 et seq.
As to Defendant University and Defendant Board of Trustees

143. Paragraphs 1-144 above are incorporated herein by reference in their entirety.

144. The Defendants' conduct in terminating the Plaintiff, and as otherwise referenced in Paragraphs 1-143, above, was motivated either solely, or in part, by an intent to discriminate against Plaintiff on the basis of her gender/race/color/sexual orientation/religion/age, in violation of the Rhode Island Fair Employment Practices Act (RIFEPA).

145. The conduct by Defendants referenced in paragraphs 1-143, above, represent a willful violation of the FEPA, by continuously maintaining employment policies which have the intended objective of removing qualified employees, including Plaintiff, from employment with the Defendants solely on the basis of her gender/race/color/age/sexual orientation and religion.

146. The Defendants' discriminatory conduct, policies, and practices violate the RIFEPA, by

Case Number: NC-2023-0189
Filed in Newport County Superior Court CV-00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 35 of 42 PageID
Submitted: 6/7/2023 3:51 PM                                      #: 82
Envelope: 4140534
Reviewer: Sandy L.

34

a. interfering with the Plaintiff's right to avail herself of the full and equal benefit
of state and federal laws preventing workplace discrimination based on
gender/race/color/age/sexual orientation and religion;

b. depriving her of the status, benefits, conditions, and privileges of employment;

c. treating her in a hostile, demeaning and unlawful manner, based on her
protected characteristics;

d. causing her lost income, benefits, humiliation, emotional injury and other harm.

147.    The unlawful practices engaged in by Defendants were motivated by
unlawful considerations concerning Plaintiff's gender/race/color/age/sexual
orientation/religion.

148.    But for the Defendants' intent to discriminate against Plaintiff
because of her protected characteristics, Plaintiff would not have been discriminated
against or terminated.

149.    The Defendants' conduct has unlawfully deprived Plaintiff of income,
benefits, privileges, promotions, and other rewards accruing to the employment
relationship to which she was entitled.

150.    The Defendants' conduct has unlawfully caused irreparable harm to
Plaintiff's reputation and professional mobility; has caused her humiliation, physical and
emotional injury, and other harm.

151.    By their intentional misconduct, Defendants have failed in its affirmative
duty under the RIFEPA to maintain a work environment free of discriminatory insult,
intimidation, and other misconduct.

Case Number: NC-2023-0189
Filed in Newpo**rt** Case: 1:23-cv-00380-MSM-PAS   Document 1-3   Filed 09/13/23   Page 36 of 42 PageID
Submitted: 6/7/2023 3:51 PM                                    #: 83
Envelope: 4140534
Reviewer: Sandy L.

35

WHEREFORE, Plaintiff prays that judgment be entered herein against Defendants,

jointly and severally.

## COUNT VII
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. §2000, *et seq*.
### As to Defendants University and Defendant Board of Trustees

152.     Paragraphs 1-151 above are herein incorporated by reference in their

entirety.

153.     Defendants willfully engaged in a policy or practice of discriminating

against Plaintiff in violation of Title VII.

154.     The Defendants' discriminatory conduct, policies, and practices violate the

provisions of Title VII, by:

a.) interfering with Plaintiff's right to avail herself of the full and equal

benefit and protection of state and federal laws intended to prevent discrimination in the

workplace based on gender/race/color/sexual orientation;

b.) depriving her of the status, benefits, privileges, and other terms and

conditions accruing to the employment relationship to which she was entitled;

c.) treating her in a hostile, demeaning, and otherwise unlawful manner

based on her gender/race/color/sexual orientation;

d.) causing her lost income and benefits, humiliation, physical and

emotional injury, as well as irreparable harm to her person and professional reputation.

155.     The unlawful practices engaged in by the Defendants were motivated by

impermissible and unlawful considerations concerning Plaintiff's protected characteristics.

Such practices include, but are not limited to, Defendants:

a.) subjecting Plaintiff to discriminatory employment practices;

Case Number: NC-2023-0189
Filed in Newport County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 37 of 42 PageID #: 84

36

b.) denying Plaintiff employment opportunities/benefits;

c.) retaliating against Plaintiff for asserting her rights to be free from discrimination based on her protected characteristics and asserting her right to academic freedom.

156.    But for the Defendants' intent to discriminate against Plaintiff because of her protected characteristics, Defendants would not have subjected her to discriminatory employment practices, denied her employment opportunities/benefits, retaliated against her for attempting to assert her right to be free from workplace conduct made unlawful by Title VII.

157.    The Defendants' conduct has unlawfully deprived Plaintiff of income, benefits, privileges, promotions, and other terms and conditions accruing to the employment relationship to which she was entitled; has caused irreparable harm to her reputation and professional mobility; and has caused her extreme humiliation, as well as physical and emotional injury.

WHEREFORE, Plaintiffs pray that judgment be entered herein against Defendants, jointly and severally.

### Count VIII
### Title IX of the Education Amendments of 1972
### 20 USC 1681 *et. seq.*
### As to Defendant University and Defendant Board of Trustees

158.    The allegations contained in Paragraphs 1-157 above are incorporated herein by reference in their entirety.

159.    At all times material to the allegations in this Complaint, Plaintiff was a qualified individual subject to the protections of Title IX.

Case Number: NC-2023-0189
Filed in Newport County Superior Court cv-00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 38 of 42 PageID
Submitted: 6/7/2023 3:51 PM                                                    #: 85
Envelope: 4140534
Reviewer: Sandy L.

37

160.     Defendant School qualifies under Title IX and must operate in a non-

discriminatory manner with respect to its policies and procedures regarding faculty.

161.     Defendants have engaged in unlawful conduct and is violation of Title IX.

162.     But for the Defendants' intent to discriminate against the Plaintiff because

of her gender, Defendants would not have engaged in the conduct alleged in this

Complaint; would not have operated in a discriminatory manner; retaliated against the

Plaintiff; or terminated Plaintiff.


WHEREFORE, Plaintiffs pray that judgment be entered herein against Defendants,

jointly and severally.


**COUNT IX**
**DISCRIMINATORY TERMS AND CONDITIONS OF EMPLOYMENT**
**HOSTILE ENVIRONMENT**
**UNLAWFUL TERMINATION**
**AGE DISCRIMINATION IN EMPLOYMENT ACT**
**29 U.S.C. § 621 ET SEQ.**
**As to Defendant University and Defendant Board of Trustees**

163.  Paragraphs 1-162 above are incorporated herein by reference in their entirety.

164.  The Defendants' conduct in terminating the Plaintiff, and as otherwise referenced

in paragraphs 1-162, above, was motivated by an intent to discriminate against Plaintiff on the

basis of her age, in violation of the ADEA, 29 U.S.C. § 621 et seq.

165.  The Defendants' conduct in terminating the Plaintiff, and as otherwise referenced

in paragraphs 1-162, above, was motivated in part by an intent to discriminate against Plaintiff

on the basis of her age, in violation of the ADEA, 29 U.S.C. § 621 et seq.

166.  The conduct by Defendants referenced in paragraphs 1-162, above, represents a

willful violation of § 4(a)(1) and (2) of the ADEA, 29 U.S.C. § 623 (a)(1) and (2), and other

sections, by continuously maintaining age-based employment policies which have the intended

Case Number: NC-2023-0189
Filed in Newport County Superior Court 0380-MSM-PAS          Document 1-3          Filed 09/13/23          Page 39 of 42 PageID
Submitted: 6/7/2023 3:51 PM                                      #: 86
Envelope: 4140534
Reviewer: Sandy L.

38

objective of removing qualified employees, including Plaintiff, from employment solely on the basis of age, and denying them benefits to which she is entitled.

163.   Defendants willfully engaged in a policy or practice of denying Plaintiff employment/severance benefit opportunities, in violation of the ADEA, 29 U.S.C. § 621 et seq.

164.   The Defendants' discriminatory conduct, policies, and practices regarding retention, and job opportunities, and severance are violative of the provisions of the ADEA, 29 U.S.C. § 621 et seq., by:

a.) interfering with Plaintiff's right to avail herself of the full and equal benefit and protection of state and federal laws intended to prevent discrimination in the workplace based on age;

b.) depriving her of the status, benefits, privileges, and other terms and conditions accruing to the employment relationship to which she was entitled;

c.) treating her in a hostile, demeaning, and otherwise unlawful manner based on her age;

d.) causing her lost income and benefits, humiliation, physical and emotional injury, as well as irreparable harm to her personal and professional reputation.

165.   The unlawful practices engaged in by the Defendants were motivated by impermissible and unlawful considerations concerning Plaintiff's age. Such practices including, but are not limited to, Defendants:

a.) Terminating Plaintiff;

b.) Denying Plaintiff fair and impartial termination/appeal hearings;

c.) Subjecting the Plaintiff to discriminatory terms and conditions of employment.

166.     But for the Defendants' intent to discriminate against Plaintiff because of her age, Defendants would not have terminated Plaintiff, or subjected her to discriminatory terms and conditions of employment.

167.     The Defendants' conduct has unlawfully deprived Plaintiff of income, benefits, privileges, promotions, and other terms and conditions accruing to the employment relationship to which she was entitled; has caused irreparable harm to her reputation and professional mobility; and has caused her extreme humiliation, as well as physical and emotional injury.

168.     By its conduct, the Employer has failed in its affirmative duty under the ADEA, by its failure to exercise reasonable care and diligence, to maintain a work environment free of discriminatory abuse directed at older workers.

WHEREFORE, Plaintiff prays that judgment be entered herein against Defendants, jointly and severally.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered herein against Defendants, jointly and severally, and in favor of Plaintiff for all damages and equitable relief available, including, but not limited to:

a.) an order that the Defendants institute and carry out practices, policies and programs which provide equal employment opportunities to qualified individuals, regardless of age/gender/race/color/religion/sexual orientation;

b.) an order that the Defendants make whole the Plaintiff with appropriate promotional opportunities, lost earnings, back-pay, front-pay, the value of lost benefits, and interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

Case Number: NC-2023-0189
Filed in Newport/Bristol County Superior Court
Submitted: 6/7/2023 3:51 PM
Envelope: 4140534
Reviewer: Sandy L.

Case 1:23-cv-00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 41 of 42 PageID #: 88

40

c.) an order that the Defendants make whole the Plaintiff by providing for any additional pecuniary losses and compensation for the damages done to her valuable reputation, in amounts to be determined at trial;

d.) an order the Defendants make whole the Plaintiff by providing compensation for non-pecuniary losses, including but not limited to emotional pain, suffering, humiliation, and mental anguish in amounts to be proven at trial, including an appropriate award of compensatory damages pursuant to R.I.G.L. § 28-50-4, 42-112-2, and 28-5-24 and reinstatement to her tenured faculty position with appropriate back pay and benefits;

e.) grant attorney's fees and the costs of this action;

f.) grant punitive or exemplary damages, as appropriate to punish the Defendants for its malicious conduct and/or for its reckless and/or callous indifference to the statutorily protected rights of the Plaintiff, including an appropriate award pursuant to R.I.G.L. § 28-50-4, 42-112-2, and 28-5-1;

g.) grant an appropriate award of prejudgment interest, including an award of interest for all damages awarded to the Plaintiff from the date this cause of action accrued, pursuant to R.I.G.L.§ 9-21-10;

h.) grant such further relief as this court deems necessary and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands trial by jury of all issues pertinent to the causes in this Complaint triable as of right by jury.

Case Number: NC-2023-0189
Filed in Newport County Superior Court 1:23-cv-00380-MSM-PAS    Document 1-3    Filed 09/13/23    Page 42 of 42 PageID
Submitted: 6/7/2023 3:51 PM                                        #: 89
Envelope: 4140534
Reviewer: Sandy L.

41

## VERIFICATION

I hereby certify that the above is true and complete to the best of my knowledge,

information and belief.

*/s/ Linda Crawford*                                    6/7/2023
_____          Date:_____
Verification

*Brie G. Fanning*
Notary: _____

Signed on this 7th day of June 2023. My Commission Expires 8/13/23

Respectfully Submitted,
Linda Crawford,
By Her Attorney,

*/s/ Stephen T. Fanning*
_____
Stephen T. Fanning #3900
305 South Main Street
Providence, RI 02903
401-272-8250
401-272-4520 (FAX)
stephenfanning@msn.com